**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2546-20

OBADIAH SALTERS,

    Plaintiff-Appellant,

v.

BRINKER INTERNATIONAL,
INC. d/b/a CHILI'S GRILL &
BAR, BRINKER NEW JERSEY,
INC. d/b/a CHILI'S GRILL & BAR,
BRINKER RESTAURANT
CORPORATION d/b/a CHILI'S
GRILL & BAR, LEONEL
RAMIREZ, both individually and in
his managerial and/or supervisory
capacity,

    Defendants-Respondents.

_____

Submitted December 15, 2021 – Decided March 11, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6543-20.

O'Connor, Parsons, Lane & Noble, LLC, attorneys for appellant (Gregory B. Noble, of counsel and on the briefs; R. Daniel Bause, on the briefs).

Jackson Lewis, PC, attorneys for respondents (Ronald V. Sgambati and Amanda E. Miller, of counsel and on the brief).

PER CURIAM

This appeal presents the question of whether N.J.S.A. 10:5-12.7 (Section 12.7) of New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, is preempted when applied to an arbitration agreement governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16. We hold that Section 12.7 is preempted.

Plaintiff appeals from a March 30, 2021 order compelling arbitration of his LAD claims and dismissing his complaint without prejudice. We affirm the portion of the order that compelled the claims to arbitration. We vacate the portion of the order that dismissed the complaint and remand for entry of a new order that stays the Law Division action pending arbitration as required by section 3 of the FAA. 9 U.S.C. § 3.

I.

The material facts concerning the agreement to arbitrate are indisputable and established in the record. On March 16, 2019, plaintiff Obadiah Salters

applied to work at a Chili's Grill & Bar restaurant in New Jersey. Chili's' corporate name is Brinker International Payroll Company, L.P. (Brinker).

As part of the application process, plaintiff was given an arbitration agreement and he agreed to arbitrate all disputes as a condition of being considered for employment. On March 18, 2019, plaintiff acknowledged receiving Brinker's policies and procedures manual, which included the arbitration agreement. That same day, he electronically signed an acknowledgment that he had read and agreed to the arbitration agreement.

The arbitration agreement stated that plaintiff and Brinker agreed to arbitrate all disputes, including employment disputes, under the employment arbitration rules of the American Arbitration Association (AAA). The agreement explained that the disputes subject to arbitration included state "anti-discrimination" laws. In addition, the agreement explained that the decision of the arbitrator would be "final and binding" and that "[m]atters covered by this Agreement are subject to arbitration, not a court or jury trial." The agreement also stated that it was governed by the FAA.

In that regard, the arbitration agreement stated, in relevant part:

> Brinker and you agree to arbitrate all disputes (except for those listed in the next section) involving legal or equitable rights, which Brinker may have against you or you may have against Brinker, its affiliates,

subsidiaries, divisions, predecessors, successors, assigns and their current and former employees, officers, directors, and agents, arising out of or in any manner related to the employment relationship. . . . Such claims include, but are not limited to, those under . . . any state or local anti-discrimination, harassment, or wage laws . . . or any other federal, state, or local law, ordinance or regulation . . . . Matters covered by this Agreement are subject to arbitration, not a court or jury trial. [1]

. . . .

All orders of the arbitrator (except evidentiary rulings at the arbitration) will be in writing and subject to review pursuant to the Federal Arbitration Act ("FAA"). You and Brinker agree that the FAA shall govern this Agreement.

. . . .

By signing below, [you] affirm that [you] have read the above Mutual Agreement to Arbitrate and agree to resolve all matters covered by the Agreement through formal, mandatory arbitration as outlined above.

On April 20, 2019, plaintiff began working for Brinker as a cook at a Chili's restaurant in Secaucus, New Jersey. Approximately a year and a half later, on October 1, 2020, plaintiff filed a lawsuit in the Law Division against

---

[1] The arbitration agreement identified five types of claims not subject to arbitration. Those included claims for workers' compensation, unemployment compensation, stock-option plans, claims exempt from arbitration under federal law, or claims already pending. Those exclusions did not include claims under LAD.

Brinker and a manager at the restaurant where he worked. In his complaint, plaintiff asserted claims under LAD, including claims of a hostile work environment, racial discrimination, retaliation, and aiding and abetting.

In lieu of an answer, defendants moved to dismiss plaintiff's complaint and compel arbitration. After hearing oral argument, on March 30, 2021, the trial court entered an order and issued a written decision compelling arbitration of all of plaintiff's claims against defendants and dismissing the complaint without prejudice.

The trial court found that plaintiff had agreed to the arbitration agreement, the agreement was valid and enforceable, and the agreement covered all of plaintiff's claims in his complaint. The court also held that Section 12.7 of LAD was preempted by the FAA as applied to the arbitration agreement between Brinker and plaintiff. Plaintiff now appeals from the order compelling arbitration and dismissing his complaint.

## II.

On appeal, plaintiff makes two arguments, contending (1) the Arbitration Agreement was not valid because it did not sufficiently explain that he was waving his right to go to court and have a jury trial; and (2) Section 12.7 of LAD makes the Arbitration Agreement invalid as against public policy. We reject

5

both these arguments. Plaintiff also contends he is entitled to reasonable attorney's fees and costs incurred in opposing defendant's motion and on this appeal. Because we reject plaintiff's other arguments, he is not entitled to fees and costs.

1.    The Enforceability of the Arbitration Agreement.

The interpretation of an arbitration agreement and its enforceability are questions of law that we review de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014). Moreover, it is undisputed that plaintiff was given a copy of the arbitration agreement and had an opportunity to review it. Consequently, we also review on a de novo basis the question of whether plaintiff agreed to arbitrate because that issue involves the application of established facts to the legal question of what constitutes assent to a contract. Skuse v. Pfizer, Inc., 244 N.J. 30, 50 (2020).

Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). The FAA "places arbitration agreements on an equal footing with other contracts." Rent-A-Center, 561 U.S. at 67.

Accordingly, "the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP, 421 N.J. Super. at 424). "A legally enforceable agreement requires 'a meeting of the minds.'" Ibid. (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)). Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 319-20 (2019).

To accomplish a waiver of rights, "[n]o magical language is required." Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). Instead, "[o]ur courts have upheld arbitration clauses that have explained in various simple ways 'that arbitration is a waiver of the right to bring suit in a judicial forum.'" Ibid. (quoting Atalese, 219 N.J. at 444). Accordingly, in employment settings, "a waiver-of-rights provision must reflect that an employee has agreed clearly and

unambiguously to arbitrate the disputed claim." Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003).

The New Jersey Supreme Court addressed the enforceability of a similar employment-arbitration agreement in Skuse v. Pfizer, Inc., 244 N.J. 30 (2020). There, Pfizer sent its agreement to the employee by email. Id. at 53-54. The agreement informed the employee that by continuing to be employed for sixty days, she would waive her right to pursue employment-discrimination claims against Pfizer in court. Id. at 50. In addition, Pfizer explained the agreement through an online "training module," and provided a link to a frequently asked questions (FAQs) document. Id. at 37. Finally, Pfizer requested employees to click a box to electronically "acknowledge" the agreement. Id. at 60-61.

In holding that Pfizer's arbitration agreement was valid, the Court made it clear that an arbitration agreement can be sent to employees by electronic means, such as email. Id. at 49-50. Moreover, if an employer's communications unambiguously explain that continued employment will be deemed assent to the agreement, then the employee will be considered to have consented to the agreement's terms. Id. at 50-52. Under those circumstances, continued employment constitutes valid consideration. Id. at 50; see also Martindale, 173

N.J. at 88 (explaining that "continued employment has been found to constitute sufficient consideration to support certain employment-related agreements").

The arbitration agreement provided to and reviewed by plaintiff is valid and enforceable. The terms of the agreement were clear in stating that the parties were agreeing to arbitrate all employment-related claims before an AAA arbitrator. In that regard, the arbitration agreement expressly stated that it covered discrimination claims, including statutory claims. The arbitration agreement was also the product of mutual assent. Plaintiff was sent a copy of the arbitration agreement. Thereafter, he acknowledged that he reviewed and agreed to the agreement. Consequently, we hold that the arbitration agreement is a valid and enforceable agreement.[2]

2.      Pre-emption Under the FAA.

Effective March 18, 2019, the Legislature amended LAD to add several sections, including Section 12.7, which states that "[a] provision in any employment contract that waives any substantive or procedural right or remedy

---

[2] Plaintiff does not argue that his claims fall outside the ambit of the arbitration agreement. Although we agree with the trial court that the arbitration agreement covered all claims asserted in plaintiff's complaint, the agreement delegated to the arbitrator any question concerning the scope of the agreement. Delegations of the scope of an arbitration agreement are enforceable under the FAA. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 529-30 (2019).

relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable." N.J.S.A. 10:5-12.7(a) (codifying L. 2019, c. 39, § 1(a)). Section 12.7 also provides that no right or remedy under LAD "or any other statute or case law shall be prospectively waived." N.J.S.A 10:5-12.7(b).

The 2019 amendments to LAD apply prospectively. L. 2019, c. 39, § 6. In that regard, the amendment states: "This act shall take effect immediately and shall apply to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date." Plaintiff agreed to the arbitration agreement in March 2019. The agreement became effective when he began working for Brinker in April 2019. Accordingly, Section 12.7 of LAD would apply to the arbitration agreement between plaintiff and Brinker unless it is pre-empted by the FAA. That issue is a question of law that we review de novo. See Skuse, 244 N.J. at 46; Kernahan, 236 N.J. at 316.

We have recently addressed that issue in a published opinion and held that that Section 12.7 is pre-empted when applied to an arbitration agreement governed by the FAA. See Antonucci v. Curvature Newco, Inc., ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 6). For the reasons set forth in Antonucci,

we hold that Section 12.7 is pre-empted and cannot be applied to the arbitration agreement between plaintiff and Brinker.

Plaintiff also makes arguments concerning the cases the trial court relied on and the right to attorneys' fees on the motion and this appeal. We reject those arguments and find that they lack sufficient merit to warrant a discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Applying our ruling to the order on appeal, we affirm the provision of the order compelling arbitration. We reverse the provision of the order dismissing the case without prejudice. See 9 U.S.C. § 3 (stating a court action should be stayed if the action involves "any issue referable to arbitration"). Therefore, we remand for entry of a new order and direct that the new order compel arbitration and stay this civil action pending the arbitration.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11